UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:20-cr-00057-DCR-EBA

UNITED STATES OF AMERICA,                                                    PLAINTIFF,

v.                          **MAGISTRATE JUDGE'S REPORT
                            AND RECOMMENDATION**

JOHN MICHAEL ESSEX,                                                          DEFENDANT.

* * * * * * * * * *

## I. Introduction

This matter is before the Court on Defendant John Michael Essex's Motion to Suppress evidence recovered during the search of a home, and a later search of a vehicle. [R. 22]. This matter has been referred to the undersigned for a recommended disposition. Having reviewed the parties' briefs and supplemental filings, and having considered all arguments at the evidentiary hearings, the undersigned recommends that Defendant's Motion to Suppress [R. 22] be DENIED.

## II. Factual and Procedural History

On July 7, 2019, Mercer County Sheriff's Deputy Sean Brown was patrolling the area of Bohon Road in Harrodsburg, Kentucky. Deputy Brown was attempting to locate an individual, Patrick Jones, who had an active arrest warrant for assault. Deputy Brown had learned from informants that Patrick Jones was known to associate with Defendant John Michael Essex. Further, Deputy Brown knew that Patrick Jones would sometimes get a ride from his brother, Derrick Jones. Derrick's vehicle had recently been spotted in the Bohon Road area.

1

While traveling on Bohon Road, Deputy Brown spotted Derrick Jones' vehicle occupied by who Deputy Brown believed to be Patrick Jones and a female subject he recognized as Nicole Votaw. Deputy Brown was aware that Votaw also had an active arrest warrant. Deputy Brown proceeded past the vehicle and then turned around to make contact with the occupants. As Deputy Brown approached, he observed the vehicle cross the front lawn of the property and drive to the backside of a trailer situated on the land. Deputy Brown got out of his vehicle and approached the trailer. As he walked up, he could hear the sound of car doors closing followed by the sound of the trailer door. While keeping an eye on the trailer, Deputy Brown called for backup. Deputy Brown did not see anyone exit the trailer.

Deputy Brown was joined at the scene by Deputy David Prather. At that time, the deputies contacted their captain, Scott Elder, who instructed them to serve the arrest warrant on Patrick Jones and take Defendant Essex into custody for his involvement in two open narcotics cases. Deputy Brown knocked on the front door of the trailer and announced his presence. Moments later, the Defendant exited the trailer and was placed under arrest. Eventually Derrick Jones (who is similar in appearance to his brother, Patrick) also exited the trailer and was detained. Police realized that Derrick did not, in fact, have a warrant, so he was promptly released. The deputies believed Votaw to still be inside the trailer, so Deputy Prather went inside to serve her outstanding arrest warrant. He located Votaw inside a hallway bathroom taking a shower. Deputy Prather allowed her to get dressed before exiting, and she subsequently entered an adjacent bedroom to retrieve some clothing. While keeping an eye on Votaw from the hallway, Prather observed, in plain view, methamphetamine pipes and a bag containing a green leafy substance—believed to be marijuana.

2

By this time, Captain Elder had gone to apply for a warrant to search the trailer based on what police had seen inside. The search yielded marijuana, digital scales, baggies often used for narcotics trafficking, a total of 69.550 grams of a heroin and fentanyl mixture, and 354.1 grams of methamphetamine. Following the Bohon Road search, Defendant Essex was released from custody.

On July 30, 2019, Deputy Brown set out to locate Defendant Essex again to serve more outstanding arrest warrants. Deputy Brown arrived at a home on Cornishville Road in Harrodsburg, Kentucky where he believed Essex to be. As he approached, Deputy Brown saw Essex leaned against a vehicle in front of the home. Deputy Brown approached and asked to speak to him. Instead of speaking with Deputy Brown, Essex walked away from the scene.

After conducting a brief search of the surrounding area, Deputy Brown could not locate the Defendant. While conducting his investigation Deputy Brown identified the owners of all the vehicles present at the scene, except for the one the Defendant was leaned against when he arrived. Notably, on July 27, 2019, the Defendant was stopped in a neighboring county driving the vehicle in question. The owner of the home confirmed to police that he did not know who the car belonged to, so it was towed from the scene. While the car was at the tow yard, police received consent from its registered owner to conduct a search. The subsequent search of the vehicle revealed multiple baggies containing a total of 364.67 grams of methamphetamine. The Defendant was later arrested.

<u>Procedural History</u>

On September 8, 2020, Essex filed a motion to suppress all the evidence seized during the execution of the July 7, 2019 search warrant and the contraband recovered from the towed

vehicle on July 30, 2019. [R. 22]. In his motion, Essex claims that officers' initial entry into the Bohon Road trailer was unlawful. [R. 22-1 at p. 4]. He further claims that the subsequent search warrant issued for the Bohon Road trailer was invalid. [*Id.* at p. 6]. Finally, Essex claims that he did not have possession nor control of the vehicle towed from the Cornishville Road location. [*Id.* at p. 7].

On September 23, 2020, a suppression hearing on the matter was held in the United States Court House at London, Kentucky. [*See* R. 43]. At the hearing, the United States and Essex presented testimony from several witnesses. A witness for Essex, Nicole Votaw, was unavailable to testify on the hearing date, as she had been admitted to the hospital. Prior to the September 23 hearing, defense counsel moved to continue the hearing on the basis of her absence. [R. 33]. However, this Court found that the Defendant's motion failed to state the nature of Votaw's testimony or how it was necessary or material to the issues at bar. [R. 38]. At the hearing, defense counsel made an oral motion to continue the suppression hearing in order to hear Votaw's testimony. [*See* R. 43]. On September 28, 2020, this Court subsequently denied Defendant's oral motion to continue the suppression hearing, citing again his failure to describe the nature of her testimony and its materiality. [R. 47]. Essex then filed a motion to reconsider, in which he stated Votaw was still hospitalized and that she intended to testify on the issue of standing. [R. 50]. This Court granted the motion to reconsider and set the hearing for a video conference on October 13, 2020. [R. 53].

Prior to the second hearing, defense counsel informed the Court that he had a scheduling conflict and would be unable to attend. Another attorney represented Essex at the hearing. That attorney informed the Court that Votaw had been released from the hospital, but her whereabouts

were unknown. [*See* R. 57]. At that time, the Court took Essex's motion to suppress evidence under advisement.

### III.  Standard of Review

Suppression of evidence is only appropriate when evidence is obtained in violation of a defendant's constitutional rights.  See *Mapp v. Ohio*, 367 U.S. 643 (1961).  A person who claims to have been aggrieved of a constitutional violation bears the initial burden of production and persuasion to suppress evidence.  *United States v. Smith*, 783 F.2d 648, 650 (6th Cir. 1986). Once the defendant has made the basis for his motion, the government then has the burden of demonstrating that there was not a constitutional violation.  See *United States v. Bradley*, 163 Fed. Appx. 353, 357 (6th Cir. 2005) (citing *United States v. Matlock*, 415 U.S. 164, 177 n. 14 (1974); *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)).  The controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.  *Matlock*, 415 U.S. at 177 n. 14.

### IV.  Analysis

A.  The Defendant has standing to challenge the search of the Bohon Road home.

A defendant can only challenge the admissibility of evidence if his own constitutional rights have been violated. *United States v. Salvucci*, 448 U.S. 83, 86 (1980). In cases involving Fourth Amendment violations, standing is determined "by deciding whether a defendant can establish 'a legitimate expectation' of privacy in the area searched or the item seized." *United States v. Davis*, 430 F.3d 345, 360 (6th Cir. 2005) (citing *Minnesota v. Carter*, 525 U.S. 83, 91 (1998)).

Essex's position, taken both in his motion and at the subsequent suppression hearings, is

that neither he nor Nicole Votaw lived at the Bohon Road trailer. [*See* R. 22-1 at p. 5]. Essex takes this position in order to challenge the validity of the officers' entry into the Bohon Road trailer to effectuate the arrest of Ms. Votaw. Indeed, if Votaw did not reside in the trailer, the entry to serve an arrest warrant would be unlawful. However, by asserting that he (and by extension Votaw) did not live at the Bohon Road residence, Essex undermines his own standing to bring a claim that his Fourth Amendment rights were violated.

Though Essex argues he did not live at the Bohon Road address, a significant amount of evidence points to the contrary. Officer Brown testified at the initial suppression hearing that reliable information from informants led him to believe that Essex and Votaw both lived in the trailer. Further, the Defendant confirmed in his own testimony that he had seen a written statement from the Bohon Road property's owner confirming that Essex had rented the trailer from him for three months. Though stopping short of confirming the three-month time frame, Essex concedes he and Votaw had been at the trailer for at least three weeks. Essex and Derrick Jones both testified that all three of the occupants of the trailer cooked, showered, and slept there—all activities that are indicative of a more permanent living situation.

It is, however, Essex's own words captured during a jail phone call that are the clearest indicator of his residency in the trailer. While speaking to his acquaintance Pete Jones, Essex stated, "The whole time me and [Votaw] *lived* down there she never went outside or goddamn nowhere when we stayed down there." [See audio recording, jail telephone call: John Michael Essex at 8 min. 55 sec. (emphasis added)]. It is clear from Essex's own words that he and Votaw, in fact, lived at the Bohon Road trailer and had an expectation of privacy therein. Thus, Essex has the requisite standing to challenge the search of the trailer.

6

B. The search of the trailer at 3175 Bohon Road was valid.

It is a basic principle of the Fourth Amendment to the United States Constitution that searches and seizures within a home, absent a warrant, are unreasonable. *Weeks v. United States*, 232 U.S. 383, 392 (1914). However, ". . . for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). "An arrest warrant alone will suffice to enter a suspect's own residence to effect his arrest." *Steagald v. United States*, 451 U.S. 204, 221 (1981). In order to enter a residence, Officers must look at common sense factors and evaluate the totality of the circumstances to establish a "reasonable belief that the subject of the arrest warrant is within the residence at the time." *United States v. Pruitt*, 458 F. 3d 477, 483 (6th Cir. 2006). The Sixth Circuit in *Pruitt* held that reasonable belief is a "less stringent" standard than probable cause. *Id.* at 484.

Here, Deputy Brown possessed the requisite reasonable belief that Nicole Votaw, an individual with an active arrest warrant, was inside the Bohon Road trailer. Deputy Brown testified that, as he drove past the residence, he saw an individual he knew to be Nicole Votaw pass him and drive around to the back of the trailer. Deputy Brown knew that Votaw had an active arrest warrant. Further, she was accompanied by another individual whom Deputy Brown mistakenly believed to be Patrick Jones, who also had an active arrest warrant. Deputy Brown witnessed the pair drive to the back of the trailer, and though he did not physically see them enter the trailer, he heard two car doors close followed closely in time by the sound of the trailer door closing. Further inspection revealed that the only two occupants of the vehicle were no longer

7

inside of it.

Further, Deputy Brown testified that he knew Votaw had an active arrest warrant. Though it is not clear from testimony when the last time Deputy Brown had checked to see if the warrant was still active, the record shows that he had no reason to believe Votaw had already been arrested. In fact, his purpose for being on Bohon Road was to locate Patrick Jones in order to serve an arrest warrant. He testified that it was his practice to check the status of warrants frequently. Further, Deputy Brown recognized Votaw from her drivers license photo, which he had viewed in order to familiarize himself with the individuals with whom Patrick Jones was living. For that same reason, it is evident that Deputy Brown had reason to believe the Bohon Road trailer was in fact Votaw's residence. Deputy Brown testified that he had learned from a credible informant that Votaw was sharing the trailer with the two Jones brothers and Essex.

Deputy Brown had enough information to establish a reasonable belief that, at the very least, Votaw was inside the trailer. Essex, in his suppression motion, argues that Deputy Brown's mistaken belief that Patrick Jones was inside the trailer renders the entry unlawful. However, this contention ignores the fact that Deputy Brown also saw Votaw outside the trailer and had reason to believe she had entered it. His mistaken belief that Patrick Jones was also inside notwithstanding, Votaw's presence alone justified entry into the residence for the limited purpose of effectuating her arrest.

Since the officers' entry into the residence was valid, the items discovered in plain view therein were lawfully seized. "It is well established that under certain circumstances the police may seize evidence in plain view without a warrant." *Horton v. California*, 496 U.S. 128, 134 (1990). In order for the plain view doctrine to apply, it is essential that:

> . . . the officer did not violate the Fourth Amendment in arriving at the
> place from which the evidence could be plainly viewed. There are,
> moreover, two additional conditions that must be satisfied to justify the
> warrantless seizure. First, not only must the item be in plain view; its
> incriminating character must also be 'immediately apparent.' . . . Second,
> not only must the officer be lawfully located in a place from which the
> object can be plainly seen, but he or she must also have a lawful right of
> access to the object itself.

*Id.* at 136-37 (internal citations omitted) (citing *Coolidge v. New Hampshire*, 403 U.S. 443 (1971)).

Upon entering the residence to arrest Votaw, officers spotted several items of contraband in plain view. Deputy Scott Elder testified at the suppression hearing that while he was in the process of arresting Votaw, he saw from the hallway of the trailer, pipes commonly used for smoking methamphetamine sitting on a nightstand in the bedroom. He also saw on the same nightstand a bag of what he suspected to be marijuana. Deputy Elder further testified that he was familiar with the nature of the items and knew them to be contraband. After the officers took Votaw into custody, they seized the contraband and later used the items to apply for a search warrant for the trailer.

The contraband that Deputy elder saw was clearly in plain view on the nightstand. Because the officers were present in the trailer to effectuate the arrest, they were not in violation of the Fourth Amendment and were lawfully located in a place where they could see the items. Further, the items' incriminating character was immediately apparent, as Deputy Elder instantly knew that the pipe was used for smoking narcotics and the bag was likely full of marijuana. Thus, under the plain view doctrine, the items in question were permissibly seized and used to obtain a search warrant that, in turn, yielded more illicit contraband.

Though Essex contends, in his motion, the serious charge that the search warrant was

obtained based on information "known to be false and included to mislead the local judge," there is no evidence that such a fraud occurred. [R. 22-1 at p. 6]. Presumably, Essex's assertion of false information stems from the officer's failure to include any information about Patrick Jones on the warrant affidavit. However, the warrant to search the trailer was obtained based on officer's observations after they had made lawful entry to arrest Votaw. Once the officers entered to effectuate the arrest, they did not conduct a full search of the trailer, instead opting to apply for a search warrant. The individual believed to be Patrick Jones (later discovered to be Derrick Jones) was detained by the back door. Nothing in the record indicates that police used any evidence garnered from this encounter to secure a search warrant for the trailer.

For the foregoing reasons, the search of the Bohon Road trailer was permissible, and any fruits derived from it need not be suppressed.

C. The Search of the Vehicle at the Cornishville Road location was valid.

Essex, in his motion, also challenges the July 30, 2019 search of the vehicle located at the residence on Cornishville Road. However, in doing so, Essex claims he "had no ownership, possession or control" of the vehicle. [R. 22-1 at p. 7]. This again evokes the question of whether or not Essex has the requisite standing to challenge the search. A defendant who fails to assert a property or possessory interest, and who fails to show that he had a legitimate expectation of privacy in the vehicle searched is not entitled to challenge a search of that vehicle. See *Rakas v. Illinois*, 439 U.S. 128 (1978). By stating unequivocally that he did not own, possess, nor control the vehicle in question, Essex all but admits that he had no legitimate expectation of privacy in it. Thus, Essex has no standing to challenge the search of the vehicle.

Essex's assertions aside, the search of the vehicle in question was proper even if he had

claimed to have standing. Evidence in this case indicates that, at the very least, the vehicle was abandoned property.  A defendant does not have a reasonable expectation of privacy in property when he abandons that property. *United States v. Dillard*, 78 Fed.Appx. 505, 509 (6th Cir. 2003); See also *United States v. Gillis*, 358 F.3d 386 (6th Cir. 2004) (Defendant did not have reasonable expectation of privacy in contents of abandoned vehicle nearby his residence.); *United States v. Grecni*, 1991 WL 139703, at *3 (6th Cir. July 30, 1991) (Defendant had no reasonable expectation of privacy in the contents of his vehicle when, in trying to elude the police, he left his car unlocked and unoccupied with keys in the ignition.).

After Essex walked away from the scene, officers began the task of discerning ownership of the many cars parked there. Officers were able to account for every car other than the one Essex had been leaning on when they first arrived. After the property owner told police that he did not know who owned the car, they had it towed to a local towing yard where an inventory search yielded contraband. Inventory searches are a well-defined exception to the warrant requirement of the Fourth Amendment. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items, . . . and to protect against false claims of loss or damage." *Whren v. United States*, 517 U.S. 806, 811 (1996). Inventory searches can be conducted when a vehicle is lawfully impounded. *United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012). Officers can exercise discretion to impound a vehicle, so long as they use "standard criteria and on the basis of something other than suspicion of criminal activity." *Id.* at 454.

Here, police impounded the vehicle after no one claimed ownership of it. The parties offered conflicting testimony at the suppression hearing regarding whether or not the

11

Cornishville Road property owner asked for the vehicle to be removed. However, the property owner acknowledged that it wasn't his vehicle and was, in fact, left abandoned on the property. Officers searched the vehicle only once it was taken to the tow yard. Further, at the suppression hearing Deputy Prather testified that officers had obtained consent from the registered owner of the vehicle. Even without that express consent, officers would have been able to conduct an inventory search of the car.

In short, Essex cannot claim that he both has no interest in the vehicle and that the search was invalid. But, the issue of standing aside, the search of the vehicle was conducted lawfully and the evidence discovered should not be suppressed.

## V.   CONCLUSION

For the above reasons, it is RECOMMENDED that the Defendant's Motion to Suppress [R. 22] be DENIED.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Bituminous Cas. Corp. v. Combs Contracting Inc.*, 236 F. Supp. 2d 737, 749–50 (E.D. Ky. 2002).   General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).   A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed October 22, 2020.

12



Signed By:

*Edward B. Atkins*   *EBA*

United States Magistrate Judge