UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal Action No. 5: 20-057-DCR |
| V. | ) ) | |
| JOHN MICHAEL ESSEX, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant John Michael Essex has filed a motion to exclude all evidence seized pursuant to a search of a trailer on July 7, 2019, and a search of an automobile on July 30, 2019. [Record No. 22] The motion was referred to United States Magistrate Judge Edward B. Atkins for issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Atkins held evidentiary hearings on September 23, 2020, and October 13, 2020. On October 22, 2020, he issued a Report and Recommendation, indicating that Essex's motion to suppress should be denied. [Record No. 60] Essex filed timely objections to the Report and Recommendation. [Record No. 62] Following careful review of the matter, the Court will deny the motion to suppress.[1]

---

[1] Although this Court must make a *de novo* determination of those portions of the Magistrate Judge's recommendations to which timely objections are made, 28 U.S.C. § 636(b)(1)(C), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

# I.

## A.   The July 7, 2019 Incident

Mercer County Deputy Sheriff Sean Brown was traveling along Bohon Road in a rural area outside of Harrodsburg, Kentucky, on the evening of July 7, 2019. [Record No. 52, p. 10] Brown was looking for Patrick Jones, who had an outstanding warrant for first-degree assault. Confidential informants had advised officers that Defendant Essex and his girlfriend Nicole Votaw (who Brown also knew had an active warrant) were allowing Jones to stay at their trailer at 3175 Bohon Road. *Id.*, pp. 11, 121. Patrick's brother, Derrick Jones, also was staying at the trailer. Derrick owned a maroon Jeep Cherokee, which Patrick had been known to drive. *Id.* at p. 18.

As Brown passed by the trailer, he observed Votaw driving the maroon Jeep down the driveway.[2] According to Brown, Votaw made eye contact with him and immediately drove through the front yard to the back of the trailer. *Id.* p. 20. Brown stopped his cruiser by the side of the road and returned to the trailer on foot. As he was approaching, he heard car doors closing and heard the back door of the trailer also close. *Id.*, p. 21.

Brown called for Deputy David Prather to meet him. Brown surveilled the trailer while waiting for Prather to arrive and did not see anyone leave during that period. *Id.*, p. 23. Once Prather arrived, Brown advised him that Votaw was inside and that she had an active warrant. *Id.*, p. 86. The officers knocked at each of the trailer's doors and announced their presence for approximately five minutes. *Id.*, p. 24. No one answered. While Brown and Prather were

---

[2]   Brown believed Patrick Jones to be a passenger in the Jeep, but it turned out to be his brother Derrick.

waiting for Chief Deputy Scott Elder to arrive, Defendant Essex walked out the front door of the trailer. *Id.*, p. 25. Brown then detained Essex on the front porch.

Prather went inside and located Votaw in a bathroom shower. *Id.*, p. 93. Elder had arrived by this point and escorted Votaw to the bedroom to get clothing and shoes. *Id.*, p. 128. Elder observed a baggie of suspected marijuana and drug paraphernalia on the nightstand as he stood outside the bedroom door. *Id.*, p. 129. Officers seized the items of contraband and Votaw was permitted to get dressed. *Id.*, p. 131.

Elder and Brown transported Essex and Votaw to the Mercer County Sheriff's Office while Prather remained on scene to secure the trailer. *Id.* Elder later obtained a search warrant based on the contraband he had seen in plain view. *Id.*, p. 35. Brown returned to the trailer and executed the search warrant. There, he found "several items of drug paraphernalia, a large amount of suspected methamphetamine, [and] a rifle." *Id*.

### B. The July 30, 2019 Incident

Essex was released from custody following his July 7, 2019 arrest. Deputy Brown next came into contact with Essex on July 30, 2019, at a residence located at 1502 Cornishville Road in Mercer County, Kentucky. Brown testified that he was searching for Essex because he had an active warrant. Informants had advised law enforcement that Essex had been staying at this address since his release from custody.

When Brown arrived at 1502 Cornishville Road, he observed approximately ten people, including Essex, standing in the driveway. Essex was leaning on the side of a silver Impala. *Id.*, p. 40. When Brown advised Essex that he had a warrant, Essex began to walk away toward a wooded area. Brown began to follow Essex but stopped after being confronted by two aggressive pit bulls. *Id.*, p. 41.

Prather arrived to assist Brown, but Essex was already gone. And none of the individuals at the scene claimed to own the silver Impala. Further, the resident of 1502 Cornishville Road, Pete Jones, told Brown and Prather that he did not want the vehicle on his property.[3] *Id.*, p. 45, 98. Accordingly, officers had the Impala towed to Linton's towing yard, where Prather searched the vehicle, locating a methamphetamine pipe in the driver's side door and a large amount of suspected methamphetamine in the glove compartment. *Id.*, p. 99. Prather removed the suspected methamphetamine from the glove compartment and placed it in the front passenger's seat.[4] *Id.* at p. 100.

## II.

### A. Evidence Seized from the Trailer

"[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). Defendant Essex maintains that Votaw did not "live" at the trailer on July 7, 2019, but the record contains ample evidence supporting the Magistrate Judge's determination that she did.

The trailer's owner, Kevin Long, provided a written statement indicating that he had rented the trailer to Essex for about three months. Officers Brown and Elder testified that

---

[3] Contrary to Brown and Prather's testimony, Jones testified that he did not tell officers that he did not want the Impala on his property. *Id.*, p. 182. However, he conceded that he told them he had never seen the vehicle before in his life and that he did not tell them *not* to tow it from his property. *Id.*

[4] Brown testified that he mistakenly stated in his report that methamphetamine was located in the passenger seat of the vehicle based on Prather's photographs. He later clarified that Prather had already searched the vehicle and removed the methamphetamine from the glove compartment by the time he arrived at Linton's towing yard. *Id.*, p. 47-50.

confidential informants had advised them that Essex and Votaw were dating and lived together at the trailer. Votaw kept clothing there and, upon officers' arrival, was taking a shower. She had prepared a dinner of fried chicken that evening and Essex acknowledged that she might have cooked dinner there on previous occasions.

DEA Task Force Officer Colby Warren interviewed Votaw at the Shelby County Detention Center on August 20, 2019. Votaw told Warren that, prior to her arrest, she had been "staying" or "living" at the trailer with Essex and that she shared the master bedroom with him. Finally, as the Magistrate Judge noted, Essex himself stated on a recorded telephone call in jail that Votaw lived with him at the trailer. [*See* Record No. 56, Conventional Filing.]

Essex also argues that officers did not have a reasonable belief that Votaw was inside the trailer on July 7, 2019. Specifically, he suggests that Deputy Brown was lying when he testified that he saw Votaw in a Jeep outside of the trailer. The defendant's argument can be summarized follows: Essex told Pete Jones during the recorded telephone call that Votaw lived at the trailer and that she "never went outside or goddamn nowhere" when she and Essex stayed there. Essex contends, since the Magistrate Judge relied on Essex's statement that Votaw resided at the trailer, he was also compelled to believe Essex's statement that Votaw did not go outside.

This assertion is simply incorrect, as it is well-established that the finder of fact may believe some, all, or none of a witness's testimony. *See United States v. Chesney*, 86 F.3d 564, 573 (6th Cir. 1996) (explaining that Sixth Circuit Pattern Instruction 1.07 is a correct statement of the law). The Magistrate Judge is in the best position to assess the credibility of witnesses and he found Brown's testimony to be believable. *See United States v. Macklin*, 819 F. App'x 372, 376 (6th Cir. 2020). Further, the Magistrate Judge did not rely solely on Essex's recorded

statements to conclude that Votaw resided at the trailer.  As explained above, substantial evidence supports that conclusion.

Essex next contends that officers did not know that Votaw had an active warrant prior to entering the trailer and, therefore, they were not permitted to enter the trailer under *Payton*, 445 U.S. 573.  This argument was already considered and rejected by the Magistrate Judge.  Deputy Brown testified that when he passed the trailer on July 7, 2019, and saw Votaw outside in the Jeep, he knew she had an active warrant.  [Record No. 52, p. 21]  Brown explained that he and Captain Elder knew this from their investigation involving Essex.  Approximately one month earlier, when officers heard that Essex was dating Votaw, they ran her driver's license and determined that she had an active warrant.  *Id.*, p. 22.  As of July 7, 2019, Brown was not aware of any information that would indicate Votaw had been arrested on the outstanding warrant.  *Id.*, p. 82.

The Mercer County Sheriff's Office has ten full-time and three part-time officers.  Hearing testimony indicates that Essex and several of his associates are well-known to this small law enforcement agency.  It also appears that Officers Brown, Prather, and Elder, at the very least, were in close communication regarding any developments involving Essex.  It is reasonable to assume that Brown would have heard about it if Votaw had been arrested.  Further, the defendant has not identified any authority indicating that officers were required to run a warrant check immediately prior to approaching the trailer on July 7, 2019.

### B. Evidence Seized from the Automobile

Finally, Essex contends that the search of the Impala was improper because he did not abandon it; the search did not constitute an inventory search; and the officers did not receive permission from the registered owner before performing the search.  However, Essex fails to

address the Magistrate Judge's finding that he does not have standing to challenge the search of the vehicle.

As pointed out in the Magistrate Judge's Report and Recommendation, Essex's motion to suppress states that Essex had "no ownership, possession, or control" of the vehicle and was simply leaning against it. [Record No. 22-1, p. 7] Since Essex admittedly did not have a proprietary or possessory interest in the vehicle, he had no legitimate expectation of privacy and, therefore, no standing to assert that his Fourth Amendment rights were violated. *See United States v. Paredes-Lima*, 493 F. Supp. 2d 958, 963-64 (S.D. Ohio 2005) (citing *Rakas v. Illinois*, 439 U.S. 129 (1978)).

Regardless, the search of the vehicle was proper. While there were some minor factual discrepancies concerning the circumstances in which the vehicle was towed from Pete Jones' property, there is no question that the decision to impound the vehicle was lawful. Accordingly, the vehicle was subject to an inventory search. *See United States v. Snoddy*, 976 F.3d 630, 634 (6th Cir. 2020) ("A vehicle is lawfully seized and, thus, subject to an inventory search if it is lawfully impounded."). Further, the registered owners consented to a search of the vehicle. [*See* Record No. 52, pp. 115, 137.]

### III.

Based on the foregoing it is hereby

**ORDERED** as follows:

1. The defendant's objections to the Report and Recommendation [Record No. 62] are **OVERRULED**.

2. The Magistrate Judge's Report and Recommendation [Record No. 60] is **ADOPTED** and **INCORPORATED**, in full.

3. The defendant's motion to suppress [Record No. 22] is **DENIED**.

Dated: November 17, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky