UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal Action No. 5:20-57-DCR-CJS-1 |
| Plaintiff, ) | and |
| ) | Civil Action No. 5:24-29-DCR-CJS |
| v. ) | |
| ) | |
| JOHN MICHAEL ESSEX, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*   \*\*\*

John Michael Essex, *pro se*, has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (R. 131). Pursuant to local practice, this matter has been referred to the undersigned for the preparation of a Report and Recommendation under 28 U.S.C. § 636(b). For the reasons set forth below, it will be recommended that Essex's § 2255 Motion **be denied.**

I.   **FACTUAL AND PROCEDURAL HISTORY**

In its decision affirming Essex's Judgment, the United States Court of Appeals for the Sixth Circuit described the background of his case as follows:

> Mercer County Sheriff's Deputy Sean Brown was trying to locate and arrest Patrick Jones, who had an outstanding arrest warrant for first-degree assault. So he patrolled an area where it was known that Jones was staying in Harrodsburg, Kentucky: the property containing the trailer defendant John Essex shared with his girlfriend, Nicole Votaw. Deputy Brown saw Votaw driving a Jeep that Jones was known to drive (and, at the time, believed Jones was in the passenger seat—it was later determined the passenger was Patrick's brother, Derrick). He then observed the car drive through the front yard to the back of the trailer and heard car and trailer doors open and close, indicating that the pair in the Jeep entered the trailer. Brown called for backup and made sure that no one left the trailer while he waited. Like Patrick Jones, Votaw also had an active arrest warrant and Deputy Brown knew that.

> Sheriff's Deputy David Prather soon arrived, the two announced their presence, and continually knocked on the trailer's door for several minutes. Essex eventually came out, and, believing Votaw was still in the trailer, Deputy Prather entered, found Votaw showering, and escorted her to the master bedroom to retrieve clothing. Marijuana and drug paraphernalia were in plain view on the nightstand. That contraband formed the factual basis for a later-executed search warrant, during which officers discovered the gun and various drugs supporting defendant's charges (and ultimate convictions) for possessing 50 grams or more of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), possessing 40 grams or more of a substance containing detectable amounts of heroin and fentanyl with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1).

*United States v. Essex*, No. 21-6137, 2022 WL 17078717, at *1 (6th Cir. Nov. 18, 2022); (*see also* R. 129).

Essex was indicted in this District on June 18, 2020. (R. 1). To bring Essex into federal custody, the United States moved for a writ of habeas corpus ad prosequendum (R. 7), which request was granted (R. 8), and Essex first appeared in this District on July 28, 2020, for his initial appearance and arraignment (R. 9). At that time, Gerry Harris was appointed as counsel for Essex under the Criminal Justice Act ("CJA"). (*See id.*). Two days later, on July 30, 2020, Essex waived his right to a detention hearing and was ordered detained pending trial. (R. 15). On August 21, 2020, the United States filed a notice under 21 U.S.C. § 851 regarding the enhanced statutory punishment for Essex if he were to be convicted. (R. 17).

Under the Pretrial and Discovery Order in this case, defensive motions were due to be filed within thirty days after arraignment and were to be accompanied by a memorandum of authorities. (R. 12 at ¶ 3). On August 28, 2020, defense counsel filed a Motion to Extend Time to File Motion to Suppress Evidence. (R. 18). That motion was denied. (R. 19). Shortly thereafter, defense counsel filed a Motion to Reconsider Motion to Extend Time to File Motion to Suppress Evidence (R. 20), which was granted (R. 21), and Defendant's Motion to Suppress Evidence was docketed on September 8, 2020. (R. 22). In that motion, Essex asked the Court to suppress the evidence

2

obtained from the search of the trailer and the search of the vehicle. (*Id.*). The United States filed a response in opposition to Essex's suppression motion (R. 24), which it later supplemented "to correct certain assertions made in its original response." (R. 31 at Page ID 127).

On September 23, 2020, Magistrate Judge Edward B. Atkins held an evidentiary hearing on Essex's suppression motion. (R. 43). Defense counsel moved to continue the hearing due to the hospitalization of Votaw, whom he hoped to call as a witness. (*See id.*; *see also* R. 47). That motion was denied (R. 47), but defense counsel's Motion to Reconsider Order Denying Motion to Continue Suppression Hearing (R. 50) was granted. (*See* R. 53). However, Votaw was unable to be located to testify at the continued hearing held on October 13, 2020.[1] (R. 57).

On October 22, 2020, Magistrate Judge Atkins issued a Report and Recommendation that recommended denial of Essex's Motion to Suppress. (R. 60). Factually, Judge Atkins detailed the officers' actions in relation to the searches of the trailer and the vehicle. (*See id.* at Page ID 409-11). Judge Atkins also made the following conclusions of law: 1) Essex had standing to challenge the search of the trailer; 2) the search of the trailer was valid; and 3) the search of the vehicle was valid. (*Id.* at Page ID 413-20). Defense counsel filed objections to the Report and Recommendation. (R. 62). The United States did not respond to Essex's objections, and Chief District Judge Danny C. Reeves adopted the Report and Recommendation and denied Essex's Motion to Suppress on November 17, 2020. (R. 63).

Following Chief Judge Reeves's denial of Essex's suppression motion, several other pretrial motions were addressed, including the United States' Motion to Dismiss Count 4 of the Indictment, which was granted. (*See* R. 72; R. 73; R. 75; R. 78). In April 2021, Harris moved to

---

[1] Harris had another attorney cover the continued hearing for him. (*See* R. 57).

3

withdraw as Essex's counsel, citing Essex's assertions that he could not best represent Essex's interests. (R. 80). That motion was granted, and Essex was appointed new CJA counsel. (R. 82).

On August 2-4, 2021, a jury trial was held on Essex's remaining charges. (*See* R. 84; R. 85; R. 87). The jury found Essex guilty on each count. (*See* R. 91). In November 2021, Essex was sentenced to a total term of 408 months of imprisonment to be followed by a total term of 10 years of supervised release. (R. 104 (Judgment entered November 22, 2021)). On December 1, 2021, Essex directly appealed to the Sixth Circuit. (R. 107). Upon review, the Sixth Circuit affirmed Essex's Judgment. *See Essex*, 2022 WL 17078717, at *5.

The Sixth Circuit issued its decision on November 18, 2022, after which Essex had 90 days to file a petition for a writ of certiorari with the Supreme Court of the United States. *See* U.S. Sup. Ct. R. 13.1. Essex did not petition the Supreme Court for a writ of certiorari, so his Judgment became final when the time to do so expired in February 2023. *See* 28 U.S.C. § 2255(f)(1). Essex filed his present motion under 28 U.S.C. § 2255 on January 24, 2024.[2] (R. 131-1 at Page ID 1523). Because Essex's motion was filed less than a year after his Judgment became final, his motion was timely made under § 2255(f)(1).

Substantively, Essex's § 2255 Motion argues that his counsel was ineffective.[3] (*See* R. 131 at Page ID 1505). The United States filed a Response in Opposition to Essex's Motion to

---

[2] Although the Clerk of Court received and docketed the Motion on February 2, 2024, the Motion is deemed filed on the date Essex deposited it in the institution's internal mailing system. *See* Rule 3(d), Rules Governing Section 2255 Proceedings for the United States District Courts. Here, the *pro se* Motion was placed in the prison mailing system on January 24, 2024. (*See* R. 131-1 at Page ID 1523). Giving Essex the benefit of the doubt and applying the prison mailbox rule, Essex's Motion to Vacate is considered to have been filed on January 24, 2024. *See Houston v. Lack*, 487 U.S. 266, 266-67 (1988) ("The general rule that receipt by the court clerk constitutes filing, although appropriate for most civil appeals, should not apply in the *pro se* prisoner context.").

[3] Essex's attorney-client privilege was deemed waived with respect to his ineffective-assistance-of-counsel claims. (*See* R. 134).

Vacate (R. 135), and Essex filed a Reply (R. 144). Essex was also given permission to supplement his Motion (R. 146; R. 147), and the United States responded to that supplement (R. 148). The matter now stands submitted for review.

II.     ANALYSIS

    A.     **Governing Legal Standard**

Under 28 U.S.C. § 2255(a), a federal prisoner may seek relief on grounds that: his conviction or sentence violated the Constitution or laws of the United States; the court lacked jurisdiction to impose the sentence; the sentence exceeded the maximum authorized by law; or the sentence is otherwise subject to collateral attack. To succeed on a § 2255 motion alleging constitutional error, a federal prisoner "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief for a non-constitutional error, a federal prisoner "must establish a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *Id.* (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

In sum, a federal prisoner must allege in his § 2255 motion "as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). A federal prisoner must prove his allegations by a preponderance of the evidence. *Id.*

    B.     **Ineffective-Assistance-of-Counsel Claims**

In his Motion, Essex argues he is being held in violation of the Constitution, laws, or treaties of the United States for the following reason: "[ineffective assistance of counsel] for failing to properly litigate the suppression motion." (R. 131 at Page ID 1505). The Court understands Essex to challenge Attorney Harris's actions in two regards.

First, he argues that Harris filed certain objections to Judge Atkins's Report and Recommendation "but failed to object to the finding that the officers had entered the trailer with the purpose of executing an arrest warrant on Votaw." (R. 131-1 at Page ID 1509). Second, he argues that his counsel failed "to litigate 'the Affidavit' that provided probable cause for the search." (*See* R. 144 at Page ID 1564).

When a defendant claims his attorney was constitutionally ineffective in violation of the Sixth Amendment, the standard from *Strickland v. Washington*, 466 U.S. 668 (1984), guides the Court's review. When assessing an ineffective-assistance-of-counsel claim, the Court must consider "whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. To establish he has been deprived of effective assistance, a defendant must show that counsel's performance was both constitutionally deficient and prejudicial. *Id.* at 687. A court may address the components in either order and does need not to "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

To prove deficient performance, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured "under prevailing professional norms" and "considering all the circumstances." *Id*. at 688. Judicial scrutiny of counsel's

6

performance, however, is "highly deferential," consisting of "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. When assessing counsel's performance, the Court must make "every effort . . . to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." *Id*.

To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. Further, "[w]here defense counsel's 'failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.'" *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

Having reviewed the overarching standard for claims of ineffective assistance of counsel, the Court turns to Essex's grounds for relief. In doing so, it first must be pointed out that much of Essex's briefing focuses on general Fourth Amendment principles and contains little discussion of how Harris provided ineffective assistance.[4] (*See* R. 131; R. 144). To the extent Essex seeks to assert any "free-standing Fourth Amendment claim[]," such a claim "cannot be raised in collateral proceedings under . . . § 2255." *Ray*, 721 F.3d at 762. But, even so, "the merits of a Fourth

---

[4] The Court also observes that Essex has drafted his filings using language from the brief filed on his behalf by counsel in his direct appeal.

Amendment claim still must be assessed when a claim of ineffective assistance of counsel is founded on incompetent representation with respect to a Fourth Amendment issue." *Id.*

### 1. Failure to Object

Essex first argues that Harris provided ineffective assistance of counsel by failing to object to Magistrate Judge Atkins's finding that the officers had entered the trailer with the purpose of executing an arrest warrant on Votaw. (R. 131-1 at Page ID 1509). As discussed above, to succeed on this ineffective-assistance-of-counsel claim, Essex must show that Harris's performance was deficient and that he was prejudiced by such performance. More specifically, because Essex challenges Harris's alleged inaction in relation to a Fourth Amendment issue, Essex must show that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. *See Ray*, 721 F.3d at 762.

For his deficient performance argument on this ground, Essex relies on the following language from the Sixth Circuit's opinion affirming his Judgment:

> [Essex] argues on appeal that the officers entered his home not to arrest [Votaw], but rather after they detained him (and Derrick Jones), and then conducted a subsequent "protective sweep" of the trailer during which they discovered Votaw and the contraband. But he made no such argument to the district court, nor did he object to the magistrate judge's conclusion that the officers "went inside to serve her outstanding arrest warrant." He has thus forfeited this issue on appeal.

*Essex*, 2022 WL 17078717, at *2. Citing this language from the Circuit's opinion, Essex argues that, by failing to object to the Magistrate Judge's finding that the officers entered the trailer to serve a warrant on Votaw when neither officer admitted any such thing, "Essex's attorney inexplicably waived this crucial and viable challenge to the validity of the initial warrantless search and thus, the subsequent search warrant and second search." (R. 131-1 at Page ID 1516-17; *id.* at Page ID 1521 ("In this case, the Sixth Circuit specifically noted that Essex's pre-trial counsel,

8

Harris, failed to raise the most obvious suppression claim in this case. Essex can think of no strategic reason why Harris failed to do so.")).

> Essex suggests in his briefing that the objection Harris failed to make was factual in nature:
>
> A central finding of fact found by Atkins was that "the deputies believed Votaw to still be inside the trailer, so Deputy Prather WENT INSIDE TO SERVE HER OUTSTANDING ARREST WARRANT." R. 60 at 410; R. 63 at 435. Although Essex's appellate attorney, Eric G Eckes, argued that the initial entry into the trailer was illegal, the Sixth Circuit Court of Appeals stated that Harris "made no such argument to the district court, nor did he object to the magistrate judge's conclusion that the officers went inside to serve her [Votaw] outstanding arrest warrant." United States v. Essex, 2022 U.S. App. LEXIS 31947; 2022 Fed. App. 0467N (6th Cir. November 18, 2022). Thus, the Sixth Circuit concluded that Essex (because of the obvious ineffectiveness of Harris) had forfeited this issue on appeal.

*Id.* at Page ID 1512. However, a review of the record demonstrates that Harris *did* maintain there was no factual support for the Magistrate Judge's finding that the officers entered the trailer to arrest Votaw. For example, Harris argued in the objections:

> I submit to this court that if you believe that Essex was saying that Votaw lived at the trailer on 7-7-19 then you must also believe that Votaw was not outside the trailer in the Jeep. If Votaw was not outside in the Jeep then the statement of Brown that he saw her and knew she was in the trailer is not true and could not have been the legal basis for entry into the trailer. Simply put, Brown never saw Votaw until she was pulled from the shower and brought to the living room. Where it was determined that Derrick Jones was not in fact Patrick Jones then the officers simply substituted Votaw as the reason for the entry into the trailer.

(R. 62 at Page ID 426). And to the extent Essex argues Attorney Harris failed to make a *legal* objection, such position is likewise refuted by the record:

> Notwithstanding Deputy Brown's testimony it is clear that he nor any of the other deputies knew that Votaw had an active warrant. Brown testified that he was aware that Votaw had a warrant more than a month before July 7, 2019 ( transcript Brown pg. 52) Brown did not verify if the warrant was still active before he entered the trailer. (transcript Brown pg. 53) This despite the fact that he waited 10 to 15 minutes for Deputy Prather to arrive. It was only after Votaw had been located in the trailer that someone, no one ever specifically testified who, ran a warrant check on her. Elder testified that as he was entering the trailer, he heard the dispatch state that there was an active warrant on Votaw. Thus, even if Votaw resided in the trailer, which the evidence at the hearing makes clear that she did not, then there

9

was no verification prior to the Deputies entry into the trailer. Deputy Brown was sure that the person in the Jeep was Patrick Jones, but it was not, and did not have legal rights to enter the trailer to execute an arrest warrant. Likewise, by not verifying the Votaw warrant he lacked legal reason for entry as well.

(*Id.* at Page ID 427-28).[5]

Harris cannot be found to have been deficient when he *did* argue for the position that Essex now says he did not. But even if the Court were to find that Harris did *not* object as Essex submits, Essex still must show that his Fourth Amendment claim has merit. *See United States v. Smith*, No. 5:22-CR-042-DCR, 2024 WL 3510045, at *2 (E.D. Ky. July 23, 2024), *reconsideration denied*, No. 5:22-CR-042-DCR, 2024 WL 4242484 (E.D. Ky. Sept. 19, 2024) (citing *Ray*, 721 F.3d at 762) ("To establish deficient performance in this context, a defendant must demonstrate that his Fourth Amendment claim has merit."). This he cannot do.

In his collateral attack, Essex questions the officers' motivations by suggesting they did not enter the trailer to arrest Votaw. (*See generally* R. 131-1 at Page ID 1513 ("The officers express purpose of illegally entering the trailer was to place Essex on a couch (even though Essex testified he specifically refused permission to enter and neither officer testified that he granted permission), and to 'figure everything out [in] there,' to determine if Derrick was his brother Patrick.") (verbatim)). However, the subjective intent of any of the officers is not the proper inquiry under the Fourth Amendment. Instead, the Court asks whether the circumstances, viewed

---

[5] The Government submits that Harris's objections "were premised on a theory that the officers lied about their observations and knowledge of Votaw and, instead, only discovered her and the warrant after finding her in the shower," and that, "[d]espite these claims, the Court credited the testimony of the officers that they had, in fact, seen Votaw in the vehicle and knew she had a warrant prior to entry." (R. 135 at Page ID 1538). Therefore, the Government maintains that "Essex's claim that his attorney failed to present an 'intent' argument is unsupported and countered by the record." (*Id.*). The Government also argues that "[t]o the extent that Essex concedes these factual findings and, instead, now claims that his counsel failed to argue that, despite officers' knowledge of Votaw's presence and warrant, they did not enter the trailer with the intent to effect this arrest, his claim also fails [because] such an argument would have been wholly inconsistent with Essex's own statements, sworn testimony, and evidence presented before and during the suppression hearing." (*Id.*).

objectively, justified the officers' actions. *See, e.g.*, *Scott v. United States*, 436 U.S. 128, 138 (1978) ("We have since held that the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."); *Whren v. United States*, 517 U.S. 806, 812 (1996) ("Not only have we never held . . . that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary.").

In this context, as the Sixth Circuit explained on Essex's direct appeal, "[f]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Essex*, 2022 WL 17078717, at *2 (quoting *Payton v. New York*, 445 U.S. 573, 603 (1980)).[6] "This is a two-part inquiry, whereby the officers must have reason to believe the home is the subject's dwelling *and* that the subject is inside." *Id.* (emphasis in original).

At the evidentiary hearing on Essex's suppression motion, the officers testified regarding the circumstances surrounding Votaw's arrest, including Deputy Brown who testified that he understood Votaw to be living at the trailer, that he believed (after detaining Derrick Jones and Essex) that Votaw was still in the trailer, and that he knew Votaw had an active warrant. (*See, e.g.*, R. 52 at Page ID 191, 194, 202-03). Under the Fourth Amendment, then, the officers were permitted to enter the trailer to find Votaw to execute the active warrant on her.

---

[6] The court in *Essex* acknowledged that the *Payton* standard has not always been approached consistently in the case law. *See Essex*, 2022 WL 17078717, at *2 (noting Sixth Circuit's "vacillation" between reasonable belief standard and probable cause standard and then resolving appeal using higher probable cause standard). However, the Court perceives no impact on Essex's present claims under any application of *Payton*.

11

The cases relied upon by Essex, including *United States v. Colbert*, 76 F.3d 773 (6th Cir. 1996), *United States v. Archibald*, 589 F.3d 289 (6th Cir. 2009), and *United States v. Rogers*, 700 F. Supp. 3d 581 (W.D. Ky. 2023), are inapposite. To be sure, these cases can be distinguished on the facts and on the legal justification put forward to support the officers' actions (protective sweeps under *Maryland v. Buie*, 494 U.S. 325 (1990)). *See Archibald*, 589 F.3d at 295 ("The Supreme Court has identified two types of warrantless protective sweeps of a residence that are constitutionally permissible immediately following an arrest. The first type allows officers to look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. The second type of sweep goes beyond immediately adjoining areas but is confined to such a protective sweep, aimed at protecting the arresting officers.") (cleaned up).

In *Colbert*, the Sixth Circuit found that a protective sweep violated the Fourth Amendment when the defendant was arrested outside his girlfriend's apartment and the officers had no articulable facts to justify the sweep of the residence. *See Colbert*, 76 F.3d at 776-78 (discussing second type of *Buie* sweep). Similarly, in *Archibald*, the Sixth Circuit held officers violated the defendant's Fourth Amendment rights when the officers conducted a protective sweep but there was no evidence of the presence of a dangerous third party in the defendant's residence. *See Archibald*, 589 F.3d at 299 (discussing second type of *Buie* sweep). And *Rogers* likewise involved a protective sweep that was found to be in violation of the Fourth Amendment because the defendant had been arrested outside of his residence and the officers lacked "articulable facts" to justify the sweep. *See Rogers*, 700 F. Supp. 3d at 582-86.

In this case, the officers' justification for entering the trailer was not to conduct a *Buie* sweep, but rather to arrest Votaw. And, as explained above, such police actions were permitted

by the Fourth Amendment. Moreover, it was only after observing items in plain view while arresting Votaw that the officers obtained the later-executed search warrant. *See Essex*, 2022 WL 17078717, at *1.

Against such a record, Essex cannot show his Fourth Amendment claim has merit to thereby support a finding of deficient performance by Harris for not objecting to the conclusion officers entered the trailer for purposes of executing an arrest warrant on Votaw. *See Steagald v. United States*, 451 U.S. 204, 221 (1981) ("As noted in [*Payton*], an arrest warrant alone will suffice to enter a suspect's own residence to effect his arrest."); *cf. United States v. Cozart*, No. 3:19-CR-123-RLJ-HBG, 2022 WL 1521511, at *13 (E.D. Tenn. Jan. 24, 2022), *report and recommendation adopted*, No. 3:19-CR-123, 2022 WL 1117103 (E.D. Tenn. Apr. 14, 2022) (discussing converse situation of when an individual is *not* a resident of the location to be entered). Because the Court finds this ineffective-assistance-of-counsel argument by Essex fails on the deficiency prong, it need not address the prejudice prong. *See Ray*, 721 F.3d at 763 n.2. It will therefore be recommended that this claim **be denied.**

### 2. Failure to Litigate "the Affidavit"

Essex next argues that "Defense Counsel never one time challenged the affidavit based on the Four Corners of the Affidavit." (R. 144 at Page ID 1567; *see also id.* at Page ID 1569 ("This Case presents very serious questions of the integrity of the federal courts. At no time did Deputy Prather witness drugs in plain view, furthermore, based on the Affidavit, and the Synopsis, they did not have probable cause to arrest Essex, and once Police saw the suspect was Derrick Jones, probable cause dissipated, as Police could have checked his identity outside. This Court failed to follow Sixth Circuit case law, and defense counsel allowed it. The devil is in the details.")).

"The Fourth Amendment requires warrants to be supported by probable cause," and "[i]n order to demonstrate probable cause sufficient to justify a search warrant, the proponent must submit an affidavit that indicates a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018) (cleaned up). "A court must look to the totality of the circumstances . . . in order to answer the commonsense, practical question of whether an affidavit is sufficient to support a finding of probable cause." *Id.* (internal quotation marks omitted). "Although the court is limited to examining the information contained within the four corners of the affidavit, line-by-line scrutiny of the underlying affidavit is improper when reviewing the issuing judge's probable cause determination." *Id.* at 923-24 (internal quotation marks and citations omitted).

The exact nature of the actions Essex argues Attorney Harris failed to take in relation to the affidavit are unclear, but no matter how they are viewed, Essex's assertions fail. For one (and like above), a review of Essex's original suppression motion demonstrates Harris *did* argue the search warrant was not valid because the information contained in it was defective. (*See* R. 22-1 at Page ID 77 ("The information in the warrant application was false, was known to be false and included to mislead the local Judge. That this false and misleading information was the basis for the issuance of the search warrant. Absent the false and misleading information, the affidavit lacked probable cause."); *see also* R. 60 at Page ID 417-18 ("Though Essex contends, in his motion, the serious charge that the search warrant was obtained based on information 'known to be false and included to mislead the local judge,' there is no evidence that such a fraud occurred.")).

For another, although Essex is correct that reviewing courts are limited to the four corners of an affidavit when determining whether probable cause is present, he is incorrect that any challenge to the affidavit would have been meritorious. *See United States v. Frazier*, 423 F.3d

526, 531 (6th Cir. 2005) ("[O]ur review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four-corners of the affidavit[.]"). Importantly, "[a]ffidavits are not required to use magic words[.]" *United States v. Christian*, 925 F.3d 305, 310 (6th Cir. 2019) (en banc) (quoting *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc)). Therefore, courts are told "to look holistically at what the affidavit does show, instead of focusing on what the affidavit does not contain, or the flaws of each individual component of the affidavit." *Id.* at 312 (citing *Hines*, 885 F.3d 919).

In this case, the affidavit used to obtain the relevant search warrant contains the following statements by Captain Scott Elder:

> On the 7 day of July, 2019, affiant received the following information:
> During the execution of an arrest, deputies observed in plain view two glass pipes used for the consuming of methamphetamine along with a bag of green leafy substance appearing to be marijuana. Those two items were lying on a table in the "master bedroom" of the trailer. Those items could be seen from the hallway near the bathroom.
>
> Acting on the information received, **Affiant** conducted the following independent investigation:
> Michael Essex was being charged with open trafficking cases that the Sheriffs Office had. During his arrest and the clearance of the home for officer safety, the above listed items could be seen in plain view.

(R. 22-4 at Page ID 85) (formatting as in original).

Essex argues that the affidavit used to support the underlying search warrant was not supported by probable cause because it "consisted of outdated, 'stale' information," that "[t]he affidavit never refers to Votaw or her arrest," that "the affidavit failed to state that Essex and Jones were originally arrested outside of the trailer and brought into the trailer by Brown and Prather to 'figure things out,'" and that it "omitted that a 'protective sweep' was made once the officers were already illegally in the trailer in the first place." (R. 144 at Page ID 1567; R. 131-1 at Page ID 1511). But, as discussed above, the officers were constitutionally permitted to enter the trailer to

arrest Votaw. Further, it was while they were in the process of doing so that the officers saw contraband (glass pipes for consuming methamphetamine and apparent marijuana) in plain view, which led them to request the search warrant. Such information "indicate[d] a fair probability that evidence of a crime [would] be located on the premises of the proposed search," meaning such information was sufficient to establish probable cause for the search warrant to be issued. *See Hines*, 885 F.3d at 923.

On this record, Essex has not shown how any Fourth Amendment challenge to the affidavit, which he faults his counsel for not making, would have been meritorious. *Cf. id.* at 926 ("At bottom, we judge an affidavit on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added.") (internal quotation marks omitted). This ground therefore fails on the deficiency prong, and the Court need not reach the prejudice prong of the analysis. *See Ray*, 721 F.3d at 763 n.2. It therefore will also be recommended that this claim **be denied.**

### III. EVIDENTIARY HEARING

As a final matter, Essex requests an evidentiary hearing and appointment of counsel for that hearing. This request should be denied. Section 2255 directs the Court to hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). To receive a hearing, a defendant must make allegations that raise at least some possibility of relief; no hearing is required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). An evidentiary hearing is also not required where "there is nothing in the record to

16

indicate" that the defendant would be able to prove his allegations at an evidentiary hearing. *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008).

As discussed above, the record in this case conclusively shows that Essex is not entitled to relief. Furthermore, Essex has not identified any additional evidence he could present at an evidentiary hearing. Therefore, it will be recommended that Essex's request for an evidentiary hearing **be denied.** And because a hearing is not warranted, neither is there a need to consider appointing Essex counsel.

### IV.     CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Federal Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may issue only if a defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court explained this requirement in *Slack v. McDaniel*, 529 U.S. 473 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under 28 U.S.C. § 2255). Where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. When a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a certificate of appealability should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

17

In this case, reasonable jurists would not debate the denial of Essex's § 2255 Motion or conclude that "the issues presented are adequate to deserve the encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it will be recommended that a certificate of appealability **be denied** upon the entry of a final order in this matter.

## V.  CONCLUSION AND RECOMMENDATIONS

For the reasons stated above, **IT IS RECOMMENDED** as follows:

1)  Essex's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (R. 131), including his request for an evidentiary hearing and appointment of counsel, **be denied;**

2)  a Certificate of Appealability **be denied** in conjunction with the entry of a final order denying Essex's § 2255 Motion in this matter; and

3)  Essex's collateral civil proceeding **be closed and stricken** from the active docket of this Court.

Attention is directed to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. <u>Specific written objections to any or all findings or recommendations in this Report and Recommendation must be filed within **fourteen (14) days** after being served with a copy of this Report and Recommendation for determination, de novo, by the District Judge.</u>  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and the Sixth Circuit Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Signed this 7th day of November, 2024.



G:\Judge-CJS\DATA\habeas petitions\2255 R&R general\20-57-DCR Essex R&R final.docx