UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal Action No. 5: 20-057-DCR |
| Plaintiff/Respondent ) | and |
| ) | Civil Action No. 5: 24-029-DCR-CJS |
| V. ) | |
| ) | |
| JOHN MICHAEL ESSEX, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant/Movant. ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This case involves law enforcement officers' entry into a trailer in Mercer County, Kentucky in July 2019. Officers entered the trailer believing that two individuals with outstanding arrest warrants had entered it just minutes earlier and had not left. Their belief was correct as to one person, but incorrect as to the second. However, while in the trailer, officers also observed drugs and drug paraphernalia, leading to the arrest of the person later discovered to be leasing the residence: Defendant/Movant John Michael Essex.

Following his indictment on drug and weapons charges, Essex moved to suppress evidence discovered by officers during their initial entry and following issuance of a search warrant for the trailer. However, his efforts to suppress that evidence failed. The primary issue currently before the Court concern whether Essex attorneys provided ineffective assistance during this proceeding. Finding that they did not, the Court will deny Essex collateral motion to vacate, set aside or correct his sentence. [Record No. 131]

## I.

Essex was convicted after a three-day jury trial of the following federal offenses: 1) possessing with the intent to distribute 50 grams or more of methamphetamine; 2) possessing with the intent to distribute more than 40 grams of a mixture containing heroin; and 3) possessing a firearm following a felony conviction. [Record No. 91] Essex filed a direct appeal with the United States Court of Appeals for the Sixth Circuit following his conviction. [Record No. 107] However, on November 18, 2022, the Sixth Circuit affirmed the conviction and sentence. [Record No. 129]

As noted above, the matter is currently pending before this Court for consideration of Essex's motion to vacate, set aside, or correct his sentence filed pursuant to 28 U.S.C. § 2255. [Record No. 131] Facts relevant to the case and to the defendant's § 2255 motion are aptly summarized in the Sixth Circuit's opinion affirming the underlying conviction.

> Mercer County Sheriff's Deputy Shean Brown was trying to locate and arrest Patrick Jones who had an outstanding arrest warrant for first-degree assault. So he patrolled an area where it was known that Jones was staying in Harrodsburg, Kentucky: the property containing the trailer defendant John Essex shared with his girlfriend, Nicole Votaw. Deputy Brown saw Votaw driving a Jeep that Jones was known to drive (and at the time, believed Jones was in the passenger seat—it was later determined the passenger was Patrick's brother, Derrick). He then observed the car drive through the front yard to the back of the trailer and heard care and trailer doors open and close, indicating that the pair in the Jeep entered the trailer. Brown called for backup and made sure that no one left the trailer while he waited. Like Patrick Jones, Votaw also had an active arrest warrant and Deputy Brown knew that.

> Sheriff Deputy David Prater soon arrived, the two announced their presence, and continually knocked on the trailer's door for several minutes. Essex eventually came out, and, believing Votaw was still in the trailer, Deputy Prather entered, found Votaw showering, and escorted her to the master bedroom to retrieve clothing. Marijuana and drug paraphernalia were in plain view on the nightstand. That contraband formed the basis for a later-executed search warrant, during which officers discovered the gun and various drugs supporting defendant's charges (and ultimate conviction) for possessing 50 grams or more

    of methamphetamine with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1), possessing 40 grams or more of a mixture or substance containing detectable amounts of heroin and fentanyl with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), and possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1).

[Record No. 129, p. 2]

  Essex's trial counsel did not move to suppress any evidence within the deadlines set by the Pretrial and Discovery Order [Record No. 12]. However, the Court later allowed the defendant to seek suppression after establishing good cause for his delayed filing. [Record No. 21] Through a motion filed September 8, 2020, Essex's counsel sought suppression of evidence recovered by law enforcement during the July 7, 2019, search, arguing that the search conducted on that date violated the defendant's rights under the Fourth Amendment to the United States Constitution. [Record No. 22]

  Through counsel, the defendant contended that, on the date in question, he was at a house owned by a friend when officers with the Mercer County Sheriff's Department" knocked on the door and advised that they had a warrant for the arrest of Patrick Jones, who they believed was currently at [the] address." [*Id.*] Essex asserts that he complied with officers' request to be searched as he stepped out of the residence, but he refused their request to enter the home to look for Jones. However, relying on two outstanding arrest warrants and information that Deputy Sean Brown had observed Jones and Nicole Votaw in a vehicle near the yard and that they were believed to have immediately enter the trailer, officers proceeded to go inside over Essex's objections.

  While Patrick Jones was not found, officers stopped Derrick Jones as he was exiting through a back door. Additionally, officers located Votaw showering in a bathroom of the residence. As Votaw was being detained (and getting fully dressed), one officer observed

drugs and drug paraphernalia in plain view within the residence. Thereafter, a warrant was obtained to search the trailer based on the officer's observations during the detention and arrest of Votaw.

A hearing on Essex's motion to suppress was held before United States Magistrate Judge Edward B. Atkins on September 23, 2020. [Record No. 43] Four witnesses testified for the United States (Deputies Brown, Prather and Elder, and DEA Task Force Officer Colby Warren), while the defendant and two additional witnesses (Derrick Jones and Delbert Pete Jones) were called for the defense.

On October 22, 2020, Magistrate Judge Atkins issued his report regarding the motion to suppress in which he recommended that the motion be denied. [Record No. 60] Based on testimony presented during the hearing, the Magistrate Judge found the following facts relevant regarding the search of the residence on Bohon Road in Mercer County:

> On July 7, 2019, Mercer County Sherrif's Deputy Sean Brown was patrolling the area of Bohon Road in Harrodsburg, Kentucky. Deputy brown was attempting to locate an individual, Patrick Jones, who had an active arrest warrant for assault. Deputy Brown had learned from informants that Patrick Jones was known to associate with Defendant John Michael Essex. Further, Deputy Brown knew that Patrick Jones would sometimes get a ride from his brother, Derrick Jones. Derrick's vehicle recently had been spotted in the Bohon Road area.
>
> While traveling on Bohon Road, Deputy Brown spotted Derrick Jones' vehicle occupied by who Deputy Brown believed to be Patrick Jones and a female subject he recognized as Nicole Votaw. Deputy Brown was aware that Votaw also had an active arrest warrant. Deputy Brown proceeded past the vehicle and then turned around to make contact with the occupants. As Deputy Brown approached, he observed the vehicle cross the front lawn of the property and drive to the backside of a trailer situated on the land. Deputy Brown got out of his vehicle and approached the trailer. As he walked up, he could hear the sound of car doors closing followed by the sound of the trailer door. While keeping an eye on the trailer, Deputy Brown called for backup. Deputy Brown did not see anyone exit the trailer.

>   Deputy Brown was joined at the scene by Deputy David Prather. At that time, the deputies contacted their captain, Scott Elder, who instructed them to serve the arrest warrant on Partick Jones and take Defendant Essex into custody for his involvement in two open narcotics cases. Deputy Brown knocked on the front door of the trailer and announced his presence. Moments later, the Defendant exited the trailer and was placed under arrest. Eventually Derrick Jones (who is similar in appearance to his brother, Patrick) also exited the trailer and was detained. Police realized that Derrick did not, in fact, have a warrant, so he was promptly released. The deputies believed Votaw to still be inside the trailer, so Deputy Prather went inside to serve her outstanding arrest warrant. He located Votaw inside a hallway bathroom taking a shower. Deputy Prather allowed her to get dressed before exiting, and she subsequently entered an adjacent bedroom to retrieve some clothing. While keeping an eye on Votaw from the hallway, Prather observed, in plain view, methamphetamine pipes and a bag containing a green leafy substance—believed to be marijuana.
>
>   By this time, Captain Elder had gone to apply for a warrant to search the trailer based on what police had seen inside. The search yielded marijuana, digital scales, baggies often used for narcotics trafficking, a total of 69.550 grams of a heroin and fentanyl mixture, and 354 grams of methamphetamine. Following the Bohon Road search, Defendant Essex was released from custody.

[Record No. 60, pp. 2-3]

Essex position at the time his motion to suppress was filed and at the time of the hearing was that neither he nor Votaw lived at the Bohon Road address. While this position implicated standing to challenge law enforcement's search of the trailer, the Magistrate Judge found reliable evidence pointing to a contrary finding. [*Id.*, p. 6.][1] Thus, Magistrate Judge Atkins

---

[1] At the time of the initial suppression hearing, Essex's counsel contended that while Votaw was at the trailer on the evening in question, she did not live at that residence and law enforcement did not have authority to enter.

>   Mr. Harris: Well, primarily, judge, Ms. Votaw was at the residence. It's based on her presence at the residence at the law—that the police officer said they had the authority to go inside the house and serve a warrant on her.
>
>   The Court: Right.
>
>   Mr. Harris: And our position is that she didn't live there, therefore, they didn't have—did not have the authority to go in the house. They had no search warrant,

found that Essex had standing to challenge the search. However, he nevertheless concluded that the search did not violate Essex's Fourth Amendment rights because Deputy Brown had reasonable belief that Votaw, an individual with an active arrest warrant, was inside the trailer. [*Id*., pp. 7-10] In addressing Essex's argument that Deputy Brown's was mistaken in his belief that Patrick Jones was inside (thus rendering the entry unlawful), the Magistrate Judge correctly noted that the defendant's contention "ignores the fact that Deputy Brown also saw Votaw outside the trailer and had reason to believe she had entered it. His mistaken belief that Patrick Jones was also inside notwithstanding, Votaw's presence along justified entry into the residence for the limited purpose of effectuating her arrest." [*Id*. at p. 8]

Rejecting Essex contention that the search warrant for the trailer was based on information "known to be false and included to mislead the local judge," Magistrate Judge Atkins found that there was no evidence that any such fraud occurred. Instead, "the warrant to search the trailer was obtained based on officer's observations [of drugs and drug paraphernalia in plain view] after they had made lawful entry to arrest Votaw." [*Id*., p. 10]

During the suppression hearing, Deputy Brown testified that, on July 7, 2019, while looking for Patrick Jones in an area where he was believed to be residing with his brother

---

just an arrest warrant for her. And she will testify that she did not live there. She was homeless—

The Court: Okay.

Mr. Harris: --simply staying there.

[Record No. 52, pp. 3-4]

(Derrick Jones), the defendant, and Votaw[2] [Record No. 52, pp. 10-17], Brown passed and recognized a maroon Jeep pulling in the driveway of the Bohon Road residence. The Jeep was owned by Derrick Jones, but Brown had been advised that Partick Jones recently had been driving the vehicle. According to Brown, "Ms. Votaw was drivin' the vehicle, and there was a male in the passenger seat that at first, I thought was Patrick Jones.[3] That's—you know, when I continued on—I didn't want to slam on the brakes there in the middle of the road, so I continued on down the road, Ms. Votaw made eye contact with me, and that's when they turned around in the yard." [Record No. 52, p. 19]

Brown was cross-examined on these points by Essex's attorney; however, his testimony was consistent regarding the events of July 7. [*Id*., pp. 51-70] Further, Brown's identification

---

[2] Deputy Brown identified Defendant Essex as "somebody we were looking for on an assault first warrant. The deputy further testified that while Patrick Jones, Essex and Votaw resided at the trailer on Bohon Road, it belonged to a third party (Kevin Long). [Record No. 52, pp. 11-12] Brown was familiar with Essex through a number of controlled buys in earlier drug trafficking investigations spanning three to four years. Brown believed that Essex had been living at the trailer for approximately four to five months. Deputy Brown also knew Votaw and was aware that she was "dating" Essex at the time based on information from confidential informants. [*Id*., pp. 12-17] Chief Deputy Scott Elder provided additional consistent testimony during the suppression hearing. [*Id.,* pp. 121-126]

[3] Brown's testimony was inconsistent with that of Derrick Jones. Jones testified during the suppression hearing that Votaw was not in the Jeep on July 4, 2019, when he observed Brown. Instead, when he later entered the trailer, Votaw and Essex were in the shower together. [*Id*., pp. 160-162, 168-170] And while Jones stated he was not living at the residence, he acknowledged that Votaw would be there most of the time when he visited. [*Id.* p. 172] Conversely, Essex testified during the suppression hearing that, as of July 7, 2019, Votaw was not living in the trailer on Bohon Road. [*Id.,* p. 197] Essex described the trailer as a "flophouse" claiming that he had stayed there for three weeks to a month while trying to find a place to move but contending that he was not actually living there and not renting it. According to the defendant, "my buddy owned it and there was probably eight or ten people in there they're all the time sleeping." [*Id*.]

testimony was consistent with the information he provided to Deputy Prater when he arrived on scene to assist.  [*Id*., p. 86][4]

After locating Votaw in a bathroom inside the trailer, and at Votaw's request, officers allowed Votaw to dress and get her shoes from a bedroom before being placed in custody. Chief Deputy Elder testified to the following observations:

> While she was gathering her clothes and I looked down, we could see the—there was a nightstand at the doorway, would have been on your left as you entered into the bedroom, and in plain view on that nightstand was a pipe that's commonly used for the consumption of methamphetamine. . . . [Additionally,] I think there was a baggy of what I suspected to be marijuana laying [sic] on the same nightstand.

[*Id*., p. 129-130]

Based on the items observed inside the trailer while detaining and arresting Votaw, Elder proceeded to obtain a state search warrant for the residence.  [*Id*., p. 134] On cross-examination, Elder confirmed that no information was included in application for the search warrant for the trailer regarding Votaw, Patrick Jones, or Derrick Jones.  [*See Id*., p. 147; *see also* Record No. 22-4 (Affidavit for Search Warrant.]  Instead, the affidavit submitted by Elder in support of the search of the trailer located at 3175 Bohon Road indicates, in part, that "[o]n the 7 day of July, 2019, affiant received the following information:  During the execution of an arrest, deputies observed in plain view two glass pipes used for the consuming of

---

[4] This testimony also was consistent with Brown's trial testimony [Record No. 122, pp. 31-43]  Although Votaw could not specifically recall being in the Jeep with Derrick Jones on July 9, she testified during trial to seeing Deputy Brown drive by and making eye contact with him. [Record No. 123, p. 85] During trial, when asked about seeing Brown while she was smoking a cigarette in Derrick's vehicle, Votaw responded, "I said it's possible.  It's definitely possible. I don't recall; but yes, that's possible."  [Record No. 123, p. 85] Further, Votaw denied that immediately before her arrest, she was taking a shower with Essex (as he had claimed during the suppression hearing).  *Id*., p. 86.

methamphetamine along with a bag of green leafy substance appearing to be marijuana. Those items were lying on a table in the 'master bedroom' of the trailer. Those items could be seen from the hallway near the bathroom." [Record No. 22-4]

Counsel for Essex filed written objections to Magistrate Judge Atkins' Report and Recommendations regarding the motion to suppress. [Record No. 62] In part, Essex's attorney argued that there was insufficient evidence to conclude that Votaw was inside the trailer at the time officers entered it to arrest her and Patrick Jones. In essence, Essex disagreed with the Magistrate Judge's factual conclusions which were based on evidence introduced during the suppression hearing. According to attorney Harris, "if you believe that Votaw was not outside in the Jeep then the statement of Brown that he saw her and knew she was in the trailer is not true and could not have been the legal basis for entry into the trailer. Simply put, Brown never saw Votaw until she was pulled from the shower and brought to the living room." [*Id.*, p. 3]

Rejecting this argument, the undersigned found that the evidence supported the Magistrate Judge's determination and concluded that officers had the legal authority to enter the trailer where they discovered evidence supporting the search warrant for the trailer.

> "[A]n arrest warrant found on probable cause implicitly carries with it the limited authority to enter a dwelling in which the subject lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). Defendant Essex maintains that Votaw did not "live" at the trailer on July 7, 2019, but the record contains ample evidence supporting the Magistrate Judge's determination that she did.
>
> The trailer's owner, Kevin Long, provided a written statement indicating that he had rented the trailer to Essex for about three months. Officers Brown and Elder testified that confidential informants had advised them that Essex and Votaw were dating and living together at the trailer. Votaw kept clothing there and, upon officers' arrival, was taking a shower. She had prepared a dinner of fried chicken that evening and Essex acknowledged that she might have cooked dinner there on previous occasions.

> . . . . Finally, as the Magistrate Judge noted, Essex himself stated on a recorded telephone call in jail that Votaw lived with him at the trailer. [*See* Record No. 56, Conventional Filing.]
>
> Essex also argues that officers did not have a reasonable belief that Votaw was inside the trailer on July 7, 2019. Specifically, he suggests that Deputy Brown was lying when he testified that he saw Votaw in a Jeep outside the trailer. The defendant's arguments can be summarized [as] follows: Essex told Pete Jones during the recorded telephone call that Votaw lived at the trailer and that she "never went outside or goddamn nowhere" when she and Essex stayed there. Essex contends, since the Magistrate Judge relied on Essex's statement that Votaw resided at the trailer, he was also compelled to believe Essex statement that Votaw did not go outside.
>
> This is simply incorrect, as it is well-established that the finder of fact may believe some, all, or none of a witness's testimony. *See United States v. Chesney*, 86 F.3d 564, 573 (6th Cir. 1996) (explaining that Sixth Circuit Pattern Instruction 1.07 is a correct statement of the law). The Magistrate Judge is in the best position to assess the credibility of witnesses and he found Brown's testimony to be believable. *See United States v. Macklin*, 819 F.App'x 372, 376 (6th Cir. 2020). Further, the Magistrate Judge did not rely solely on Essex's recorded statements to conclude that Votaw resided at the trailer. As explained above, substantial evidence supports that conclusion.
>
> Essex next contends that officers did not know that Votaw had an active warrant prior to entering the trailer and, therefore, were not permitted to enter the trailer under *Payton*, 445 U.S. 573. This argument was already considered and rejected by the Magistrate Judge. Deputy Brown testified that when he passed the trailer on July 7, 2019, and saw Votaw outside in the Jeep, he knew that she had an active warrant. [Record No. 52, p. 21] Brown explained that he and Captain Elder knew this from their investigation involving Essex. Approximately one month earlier, when officers heard that Essex was dating Votaw, they ran her driver's license and determined that she had an active warrant. *Id*., p. 22. As of July 7, 2019, Brown was not aware of any information that would indicate Votaw had been arrested on the outstanding warrant. *Id.*, p. 82.
>
> . . . . It also appears that Officers Brown, Prather, and Elder, at the very least, were in close communication regarding any developments involving Essex. It is reasonable to assume that Brown would have heard about it if Votaw had been arrested. . . .

[Record No. 63, pp. 4-6]

As the above summary confirms, through a pre-trial motion to suppress which was thoroughly litigated before the United States Magistrate Judge and the undersigned, Essex challenged the testimony which supported officers' entry into the trailer on July 7, 2019. However, ample evidence supported the Court's determination that both Essex and Votaw were living there at the time officers entered and that sufficient evidence supported their entry based on an outstanding arrest warrant for Votaw and reasonable belief that Votaw was present. Once inside, officers observed drugs and drug paraphernalia which supported the search warrant for the property which was later issued by a state court judge. Based on these observations, it was unnecessary for the affidavit supporting the search warrant to identify Votaw as the reason officers had entered the trailer as Essex argues.

## II.

Consistent with local practice, Essex's motion to vacate, set aside, or correct his sentence was referred to United States Magistrate Judge Candace J. Smith for issuance of a Report and Recommendation ("R&R"). On November 7, 2024, Magistrate Judge Smith issued her R&R, recommending that the motion be denied. [Record No. 149] Essex filed objections to the R&R on December 3, 2024. [Record No. 152]

The Court reviews *de novo* any parts of a R&R to which a party objects, but it is not required to review a magistrate judge's factual or legal conclusions when no objections are timely filed. *Thomas v. Arn*, 474 U.S. 140 (1985). While Essex makes several specific objections which are addressed herein, he also seeks to "object to the entirety" of the R&R. [*Id.*, p. 1.] However, "a general objection to the entirety of [a] magistrate's report has the same effects as would a failure to object." *Howard v. Secretary of Health and Human Services*, 932

F.2d 505509 (6th Cir. 1991).  As United States District Judge David Bunning of this Court explained in *Taylor v. Lusardi*, Civil Action No. 16-174:

> Objections to a magistrate judge's R&R must be specific, Fed. R. Civ. P. 72(b)(1), as the purpose of the objections is to "enable[] the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985).  Therefore, vague, general, or conclusory objections are improper, will not be considered by the reviewing court, and are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F.App'x 354, 356 (6th Cir. 2001); *see also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[A] general objection to a magistrate report, which fails to specify the issue of contention, does not satisfy the requirements that an objection be filed.  The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").  Objections that merely disagree with the magistrate judge's conclusion or repeat arguments considered by the magistrate judge are similarly improper.  *United States v. Bowers*, No. 0: 06-cv-7-DLB-REW, 2017 WL 6606860, at *1 (E.D. Ky. Dec. 26, 2017); *United States v. Vanover*, No. 2: 10-cr-14, 2017 WL 1356328, at *1 (E.D. Ky. Apr. 11, 2017).

2019 WL 6210886 at *1 (E.D. Ky. Nov. 21, 2019).

Essex contends that Magistrate Judge Smith erred in recommending that no evidentiary hearing be held to resolve alleged "factual disputes" raised through his motion.  More specifically, he contends that the Magistrate Judge incorrectly concluded at page one of her R&R that "Deputy Brown saw [Nicole] Votaw driving a jeep that Jones was known to drive."[5]  According to Essex, this finding was outside the four corners of an affidavit supporting a search of a residence where the defendant was later found and arrested.[6]  Essex believes that subject officer who claimed to see Votaw driving the jeep lied and that his attorney was ineffective for failing to request a *Franks* hearing on this point and that officers did not have

---

[5]  Essex also contends that "a so-called CI did not establish reason to believe and/or probable cause that Votaw was living at the trailer.  [*Id.*, p. 3]

[6]  This purported "finding" by Magistrate Judge Smith is quoted background information taken from the opinion of the Sixth Circuit affirming Essex's conviction and sentence.

probable cause to arrest him. According to Essex, at the time of his arrest, "there was no warrants or indictments on him for the alleged controlled buys that happened 9 months prior." [*Id*., p. 3.] However, as outlined above, substantial evidence supported the Court's finding regarding Votaw being in the Jeep outside the property and then entering the trailer. The issue was fully litigated before the Magistrate Judge and the undersigned prior to trial through the defendant's motion to suppress.

Next, Essex argues that, like *United States v. Rogers*, 700 F.Supp.3d. 581, 582-86 (W.D. Ky. 2023), he was arrested outside his residence and officers lacked "articulable facts" to justify a sweep [of the trailer]. [*Id*., p. 4] *See also, Steagald v. United States*, 451 U.S. 204 (1981) (holding an arrest warrant alone does not authorize officers to enter the home of a third party and that, absent exigent circumstances or the resident's consent, officers must obtain a warrant before entering the third party's home). Thus, according to the defendant, the narrow issue presented is whether an arrest warrant, as opposed to a search warrant, is adequate to protect the Fourth Amendment interest of persons not named in the warrant when their home is searched without consent and in the absence of exigent circumstances.

Essex's arguments fail for several reasons. First, based on observations by Deputy Brown, law enforcement had strong reason to believe that an individual with outstanding warrants (*i.e.*, Nicole Votaw) was located inside the trailer and that she was located there at the time of their entry. Second, the officers had probable cause to believe that this was Votaw's residence. Third, law enforcement did not enter based on their arrest of Essex. In fact, at the time of the suppression hearing before the Magistrate Judge, Essex disavowed that he resided

at that location.[7] Fourth, the officers' subsequent search *via* a valid search warrant was based on contraband observed while the officers were lawfully inside the trailer looking for Votaw. And fifth, as Magistrate Judge Smith correctly concluded, Essex Fourth Amendment claim is simply without legal merit [Record No. 149, pp. 10-16].

### III.

Magistrate Judge Smith correctly concludes that an evidentiary hearing is not necessary to resolve the defendant's motion to vacate, set aside, or correct his sentence. [Record No. 149, p. 16-17] Such is not required where "there is nothing in the record to indicate" that the defendant would be able to prove his allegations at an evidentiary hearing. *Amr v. United States*, 280 F.App'x 480, 485 (6th Cir. 2008). And here, Essex has not identified any additional evidence he could present if a further evidentiary hearing were scheduled.

### IV.

The Court will not issue a Certificate of Appealability on any issue. Essex has not demonstrated that reasonable jurists would find that this Court's assessment of any constitutional claim is debatable or wrong. *Slack v. McDaniels*, 529 U.S. 473, 484 (2000). Likewise, reasonable jurists would not find it debatable that this Court procedural rulings are correct. *Id*. at 484. Reasonable jurists would not debate the denial of Essex's § 2255 motion

---

[7] As the United States correctly notes in its response to the present motion, "Essex's claim that his attorney failed to present an 'intent' argument [regarding officer's purpose for entering the trailer] is unsupported and countered by the record." [Record No. 135] And to the extent that now claims that his counsel failed to argue that, "despite officers' knowledge of Votaw's presence and [arrest] warrant [for her], they did not enter the trailer with he intent to effectuate [her] arrest, his claim fails [because] such an argument would have been wholly inconsistent with Essex's own statements, sworn testimony, and evidence presented before and during the suppression hearing." [*Id.*]

or conclude that the issues presented "are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

V.

Based on foregoing discussion and analysis, it is hereby

**ORDERED** as follows:

1. United States Magistrate Judge Candace J. Smith's Report & Recommendation [Record No. 149] is **ADOPTED** and **INCORPORATED** here by reference.

2. Defendant/Movant John Michael Essex's objections to the Magistrate Judge's Report and Recommendations [Record No. 151] are **OVERRULED**.

3. Defendant/Movant John Michael Essex's motion to vacate, set aside, or correct his sentence filed pursuant to 28 U.S.C. § 2255 [Record No. 131] is **DENIED**.

4. Defendant/Movant John Michael Essex's related collateral civil proceeding [Civil Action No. 5: 24-029-DCR-CJS] is **DISMISSED** and **STRICKEN** from the docket.

5. A Certificate of Appealability will not issue.

Dated: December 19, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky